UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| RICHARD DOYING, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO: 1:23-cv-00087 |
| | ) |
| MIDCONTINENT INDEPENDENT | ) |
| SYSTEM OPERATOR, INC., | ) |
| | ) |
| Defendant. | ) |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

1. Plaintiff Richard Doying ("Doying") is 60 years old, has epilepsy, and was a senior executive employed by defendant Midcontinent Independent System Operator, Inc. ("MISO"). MISO announced it was terminating Doying after a period of increasingly visible and severe epilepsy symptoms. Doying ultimately underwent brain surgery with the goal of reducing or eliminating seizures. On the day Doying returned to work, MISO Chief Executive Officer John Bear ("Bear") told Doying he would be terminated. Bear subsequently issued a company-wide memorandum announcing Doying was "transition[ing]" as part of a plan to "empower and enable [MISO's] next generation of leaders." Based on these facts, and as more specifically alleged below, Doying brings this action against MISO for violating his rights as protected by the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq*., and Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq*.

## PARTIES

2. Doying is a resident and citizen of the State of Indiana.

3. MISO is a nonprofit corporation organized under the laws of the State of Delaware with its principal place of business in Carmel, Indiana.

## JURISDICTION AND VENUE

4. Jurisdiction is conferred on the Court by 28 U.S.C. § 1331.

5. MISO is an employer as defined by 29 U.S.C. § 630(b) subject to the ADEA.

6. Doying was an employee of Defendant as defined by 29 U.S.C. § 630(b) of the ADEA.

7. Defendant is a covered entity and employer under the ADA as defined by 42 U.S.C. §12111(2) and (5).

8. Doying was, at all relevant times alleged herein, a qualified individual under the ADA as defined by 42 U.S.C. §12111(8).

9. Doying satisfied his obligation to exhaust his administrative remedies with respect to his claims for relief, having timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). The EEOC issued a right-to-sue notice to Doying. He now timely files his lawsuit.

10. Venue is proper in this Court and the Indianapolis Division thereof as Defendant is located in Hamilton County, Indiana, and the operative events occurred in Hamilton County.

## FACTUAL ALLEGATIONS

11. Defendant MISO is an independent, not-for-profit organization that manages energy markets and generation and transmission of high-voltage electricity across 15 states and

one Canadian province.

12. Doying joined MISO in December 2002, and was employed there continuously through December 31, 2022. As of January 2022, Doying held the position of Executive Vice President, Market and Grid Strategies. Doying's responsibilities included development of MISO's market and operational strategy, federal and state policy analysis, market R&D, and market development. Doying reported directly to Bear beginning approximately January 2009, when Bear became the Chief Executive Officer of MISO.

13. Doying has epilepsy. Doying was not formally diagnosed until the late 2000s, after he began employment with MISO.

14. The symptoms of Doying's epilepsy have increased in frequency, severity, and visibility over the years. When Doying was initially diagnosed, his condition was determined by his physician to be episodic "auditory aphasia" involving brief periods in which Doying could not understand language. These episodes typically lasted no more than a few seconds, and other people were generally unaware that he was having an episode at the time. Over time, Doying also began to have periods of brief impairment of awareness. As Doying's epilepsy progressed, he experienced a tonic-clonic ("*grand mal*") seizure–i.e., loss of consciousness accompanied by physical symptoms such as loss of muscle control and spasms. After experiencing his first such event, Doying's episodes became more severe and were characterized by aphasia, awareness impairment, and physical manifestations such as vocal gesticulations. At that time, Doying was diagnosed by his neurologist as having epileptic focal seizures. Doying's epilepsy substantially limited major life activities. For example, due to his epilepsy, Doying could not operate motor

vehicles.

15. Defendant MISO was aware of Doying's epilepsy due to seizures that occurred while Doying was at work. Over the years, Doying had discussed his condition with Bear on multiple occasions. Doying described to Bear the nature of the episodes and advised Bear as to the appropriate actions to take during and after a seizure.

16. In 2021, Doying experienced an increase in frequency and severity of his seizures. They became more common in the workplace, including Doying having seizures in Bear's office. In the fall of 2021, Doying advised Bear advised that, due to increasingly frequency and severity, he was considering brain surgery to attempt to reduce or eliminate his seizures.

17. Doying elected to undergo surgery and scheduled unpaid leave under the Family and Medical Leave Act ("FMLA") for that purpose. Doying discussed the planned leave and its purpose with Bear.

18. Shortly before Doying's planned leave, Bear confronted Doying regarding his condition, claiming that "admins" were telling him that Doying "was having seizures every other day." Doying is informed and believes that no "admins" had actually made such statements to Bear because, among other things, Doying was not having seizures with nearly that level of frequency.

19. Doying took leave to have brain surgery in April 2022. The surgery appears to have been successful in that, through the date of filing, Doying has not had any seizures. However, it was impossible to know for at least a period of months after surgery whether or not it had been successful.

20. On May 17, 2022, Doying returned from FMLA leave. That same day, Doying had a meeting with Bear. In that meeting, Bear removed Doying from his position as Executive Vice President. Bear told Doying he was being placed in a special advisory role through December 31, 2022, at which time his employment with MISO would be terminated. Bear did not offer a reason for the termination decision at that time.

21. Based on the matters set forth above, Doying is informed and believes that MISO's decision to terminate him was the result of discrimination based on disability, a history of disability, and/or the fact that MISO regarded him as disabled.

22. On June 13, 2022, Bear issued a company-wide "Plugged In" memorandum announcing Doying's impending departure. A copy of the memorandum is attached as Exhibit A. The memorandum stated, in relevant part:

> As we focus on the future of our organization, we must empower and enable our next generation of leaders ... . During the past several years, we have spent considerable time working on and executing our executive leadership succession and transition plan.
>
> Today, with mixed emotions, I would like to introduce the next phase of that plan, which includes the transition of Executive Vice President Richard Doying at the end of this year.

23. Based on the explicit statement that MISO was terminating him to "empower and enable [its] next generation of leaders," Doying is informed and believes the decision to terminate him was the result of discrimination based on age. Doying is currently 60 years

old and was 60 years old at the time the termination decision was communicated.

24. On or about November 18, 2022, after having been informed of his year-end termination and MISO having failed to withdraw its decision, Doying gave notice of his intent to retire from MISO effective December 31, 2022. Doying gave notice of retirement in order to protect entitlement to certain incentive payments that he would otherwise lose upon termination. In communicating his decision, Doying stated that he was retiring due to MISO's previously communicated May 17 decision to terminate his employment. Doying's decision to retire was not voluntary and would not have been made but for the fact that MISO had unequivocally and unconditionally advised that his employment would be ending on December 31, 2022.

25. Doying's employment with MISO ended effective December 31, 2022.

26. Doying met all legitimate job expectations and requirements and was able to perform all essential functions of his position at all relevant times, with or without accommodation.

27. Doying has suffered and will continue to suffer damages based on the matters alleged herein, including, but not limited to, lost wages and benefits and emotional distress.

## COUNT I

### Disability Discrimination – ADA

28. Doying hereby realleges and incorporates paragraphs 1- 27 of his Complaint as if fully set forth herein.

29. Defendant MISO took adverse employment actions and discriminated in terms and conditions of employment against Doying in violation of the ADA because of his disability, history of disability, and/or because it regarded him as disabled.

30. Defendant's unlawful actions were intentional, willful, and done in reckless disregard of Doying's rights.

31. Doying has been damaged as a result of Defendant's conduct.

32. Wherefore Doying requests relief as set forth below.

## COUNT II

### Age Discrimination – ADEA

33. Doying hereby realleges and incorporates paragraphs 1- 32 of his Complaint as if fully set forth herein.

34. Defendant took adverse employment actions and discriminated in terms and conditions of employment against Doying in violation of the ADEA because of his age.

35. Defendant's unlawful actions were intentional, willful, and done in reckless disregard of Doying's rights.

36. Doying has been damaged as a result of Defendant's conduct.

37. Wherefore Doying requests relief as set forth below.

## REQUESTED RELIEF

WHEREFORE, Plaintiff, Richard Doying, by counsel, respectfully requests that the Court find for him and order that:

1. Defendant reinstate Doying to the same position, salary, and seniority, or award front pay and benefits to him in lieu of reinstatement;

2. Defendant pay lost wages and benefits to Doying;

3. Defendant pay compensatory and punitive damages to Doying;

4. Defendant pay liquidated damages pursuant to 29 U.S. Code § 626(b) of the ADEA.

5. Defendant pay pre- and post-judgment interest to Doying;

6. Defendant pay Doying's attorneys' fees and costs incurred in litigating the action; and

7. Defendant pay to Doying any and all other legal and/or equitable damages and provide such other non-monetary relief that the Court determines appropriate and just to grant.

Respectfully submitted,

John H. Haskin, Attorney No. 7576-49
John R. Hurley, Attorney No. 34437-49
JOHN H. HASKIN & ASSOCIATES
255 North Alabama Street, 2nd Floor
Indianapolis, Indiana 46204
Telephone:   (317)955-9500
Facsimile:    (317)955-2570
Email:         jhaskin@jhaskinlaw.com
Email:         jhurley@jhaskinlaw.com
Counsel for Plaintiff Richard Doying

## DEMAND FOR JURY TRIAL

Plaintiff, by counsel, respectfully requests a jury trial for all issues deemed triable.

Respectfully submitted,

John H. Haskin, Attorney No. 7576-49
John R. Hurley, Attorney No. 34437-49
JOHN H. HASKIN & ASSOCIATES
255 North Alabama Street, 2nd Floor
Indianapolis, Indiana 46204
Telephone:   (317)955-9500
Facsimile:    (317)955-2570
Email:         jhaskin@jhaskinlaw.com
Email:         jhurley@jhaskinlaw.com
Counsel for Plaintiff Richard Doying